Good afternoon, Your Honors, and may it please the Court. The District Court transferred this case to the District of Columbia, holding that Section 1404 favors judicial efficiency over the development of law across multiple circuits. That holding is not supported by Supreme Court precedent, and it would turn Section 1404 into a potent weapon for the rules and federal statutes. Let me start there with things that I did not see in the written papers. The 1404 requires multiple venues being appropriate. Am I correct that the only reason D.C. is an appropriate venue for this case is the statute providing the District of Columbia being an alternative venue in most any case challenging a government agency action? That's right. In this case, it's because the HHS Secretary, Alex Azar, has his office in the District of Columbia, and since he's one of the defendants in this case, that's what makes the venue lie in the District of Columbia as well as in the District of Minnesota. Well, if it was an appeal from the rulemaking, or if it was an appeal in which your clients had been administratively prosecuted for something, there would be alternative venue, court of appeals venues. I think that's correct, yes. Immediately? Yes. Now, the other thing, I don't think I saw in anybody's paper a 1404A transfer case where the party requesting transfer was a government agency requesting transfer to the District of Columbia. Has there ever been such a case, and can you tell me a site for one? Where the District of Columbia asked for, where the government asked for it to be transferred to the District of Columbia? Over the opposition of a private party who had sued in its preferred venue. You may have to ask the government that question. Did you look for a case like that? I think there were some APA challenges cited in the briefing at the district court level from the District of Minnesota and others where both we and the government had competing interpretations of some APA challenges. Of the ones where transfer for the purposes of consolidation was granted, those tended to be ones where the review of the APA record would be extensive and unusually time consuming because they were sufficient evidence challenges, challenges that required a deep dive into the administrative record, whereas this is a case that isn't going to require such a deep dive. Well, 230,000 pages sounds like a fair amount, even to lawyers and judges. Now, any of those circuit cases? I'm not aware of any. The circuit courts simply review the transfer decisions on petitions for mandamus. Yeah. Meaning that nobody's ever mandamused or they go on into a black hole? In the Eighth Circuit, there have been about 10 or 15 cases reviewing and one in which the decision was reversed. That's the In re Apple case. That wasn't an APA case, but that's one Eighth Circuit example of an abuse of discretion. But is that a government case? A case where the government prevailed over an opposing private litigant to get the case inside the beltway, so to speak? I don't know the answer. That's probably a better question to be asked to the government. I asked, okay, were any of them circuit decisions? I can't answer that. The government may be able to support with examples of that. But I think what the point you're making- I gather you just accept as gospel the notion that normal 1404A transfer principles among that govern private litigation apply to give the government nearly carte blanche to do that in this situation. Well, we're not the government. They're the government. But you don't suggest what I'm suggesting, that maybe 1404A transfer principles that apply to private litigation do not automatically apply to a government regulatory situation where the government wants all of the regulatory challenges heard in the DC Circuit. This is a pretty novel case. And I think that's- But novel cases call for creative lawyering. Are you just accepting what your brief suggests, which is that there's only one universe of legal principles that apply in 1404A transfer situations? I think given that the unusualness of the government's motion in this case to try to consolidate them, the best we can do is to look at the cases where the Supreme Court has had to reason in analogous situations, of which Mendoza is the most on-point case. That was the one case where the Supreme Court has had to weigh judicial efficiency that would come from limiting review. 1404A case. I agree. The principles are fine there. But you don't just grab them out of the hat and plug them into 1404A without analysis. Which is basically what you're trying to do. Well, our analysis is essentially that in this situation, the question of which is more important, allowing multiple suits, raising the same question of law, or limiting those suits for the sake of efficiency. I'm inconsistent with 1404A dogma. In what way? Well, first of all, the convenience of the parties is the be-all and end-all, and on top of that, if you inconvenience the courts, forget it. And then you can't mandamus because it's all discretionary. That's transfer dogma in private litigation. It's certainly, the lower court ruled that the convenience of the parties weighed only slightly in favor of transfer, which is pretty clearly not enough on its own to outweigh the substantial deference shown to a plaintiff suing in their home district. What this really turned on was the third prong, the interest of justice factor, and that's what the lower court hung this judicial efficiency in terms of how many courts, how many judges have to work on it. Well, counsel, each side has their own sort of pet cases on this, right? So the other side has Ferens and you have Mendoza. None of them are on point. As Judge Loken points out, Mendoza's a collateral estoppel against the government case. The Ferens case is about choice of law, and each one suggests something different. Ferens suggests that, you know, let's not waste district court resources. Let's not waste court resources. And the Mendoza case says, you know, we like the development of circuit splits and the percolation of legal issues. So what do we do? I mean, we've got two non-on-point cases both saying what seemed to be conflicting in this case. Isn't this then just a district court matter? I don't think so, Your Honor. I think the approach is best shown in the Atlantic Marine Construction Code case from 2013, where the court basically found that when there's an on-point venue selection clause in a case, that the efficiency of any other district other than the venue selected can't be a factor at all. I think when the question before the reviewing court is whether or not something should be a factor at all, that's a question that you have to review de novo. The discretion and deference that's given to lower courts is on matters of weighing various proper factors, not on whether or not a factor was proper or improper. And in this case, what we're arguing is that the factor of another pending case raising the same question of law was an entirely improper factor. But can you make that case, given that Ferens, I mean, I realize it's not on point, but neither is your case. Can you really make that case when Ferens recognizes that duplication of district court efforts may not be a great policy for courts to follow? I think, first, I think that Ferens wasn't considering public law litigation like this. There are many cases where lawyers have brought public interest litigation campaigns, which we acknowledge this is one of, and it has resulted in more circuit review than there otherwise would have. I can point it to Moore v. Kim as one example that was on the mandatory detention provision in the Illegal Immigration Reform Act. Three of the five circuit court cases on that question had been brought by the same ACLU attorneys who argued the Supreme Court case. But the Supreme Court did not suggest that the percolation was any lesser than that or that that was a burden on the federal court system for the question to have been presented those five times. Obergefell v. Hodges had an appendix at the end that listed all of the various judges who had considered the question, many of them in cases that had the same attorneys bringing the cases. And again, they didn't suggest that the percolation value was any less. How much does your argument depend upon the so-called improper factor that you're talking about, which is consolidating the case because there's a pending case proceeding? If we disagree with you and think that that was a proper factor for the for the district court to consider, do you lose? I think so. Yeah, I think that was determinative. And I think the judge would low would even have acknowledged that. But for that factor, transfer would not have been granted. So that really is the issue here. They're also very I think the structure in interpreting Section 1404, there's evidence that it doesn't really make sense to treat it as a consolidation of issues statute. For one thing, if you Section 1407 is where Congress specifically considered the issue of consolidation and when it's appropriate and when it's not appropriate, and when they were specifically considering that issue and writing a more detailed worded fact, not identical questions of law, the government's interpretation would say that in we brought up the Clean Water Act litigation where they tried and failed to use 1407 to consolidate them under their interpretation. They just picked the wrong statute. They should have picked 1404 and they would have won in a very piecemeal, less efficient way by transferring it and having it granted in each individual case. It's not plausible when we're looking at the structure of the federal system as a consolidate public law, questions of constitutional law, and not 1407, given that 1407 is a much more efficient one panel makes a decision for all of the cases. Second, when Congress thinks it's appropriate to consolidate all cases raising a particular issue or on a particular topic, it does so explicitly. To give one example, challenges to EPA rules promulgated under the Clean Air Act by statute are all consolidated in the D.C. Circuit. There is no such statute for challenges to FDA rules or to challenges to rules promulgated under the Tobacco Control Act. And so I think the default rule, which is that venue is appropriate wherever a plaintiff lies, shows Congress contemplating that multiple plaintiffs would challenge rules in multiple venues. I think the fact, as you said, that there's no on point precedent here is just evidence as to how unusual the government's consolidation was and their argument that the only argument they have to distinguish this is that the lawyers are identical. But as we argued, percolation is valuable just as much when a litigation campaign is the reason for it. I'll reserve the remainder of my time. I want to come back to your state. Do you lose if the district court considered the right factors? And you said, I think so. Yes. Did your client argue to the district court the reasonable, potentially reasonable alternative of denying transfer, staying the case and administratively closing it until the district court, the D.C. courts rule? No, Your Honor. I don't think that would, um, yeah. Uh, I think they have as much of a right to challenge the rule as any other plaintiffs in any other district. And courts consider identical questions of law. Courts stay overlapping litigation in multiple jurisdictions all the time. It can't, it can happen. We, our, our clients are burdened by it right now. And I, so, uh, no, I think time is of the essence for both our clients who you can see how important this case is to them, given that they came today. Where do we go on the record to find the factually distinguishing aspects that your clients want to litigate? It's actually distinguishing from Texas and D.C. cases. It's not factually distinct from those cases. It's merely that this is their case and they've decided to litigate this case in their home forum. But stay, but stay, stays are granted all the time in that situation. Whoever brought the first suit or whoever has moved it further along when the, when the overlapping jurisdictions are pointed out. Uh, that might be. The court goes first. Uh, in some situations that's true, but if there's no benefit other than, um, if the two courts are not binding on each other, if they're in different circuits, I don't think that's necessary. Uh, I don't, I don't think you understand the law. That's, that's true in all, in every overlapping case. The two courts are not, are not, are not controlling on each other. They're both trial courts. It's the question is, do, do two courts have to do the same thing simultaneously? Or can you wait until you get the decision from the first and the second decides if it's persuasive? The district court, if the transfer is reversed, it may continue to have that discretion, but many courts have decided that such a stay is not necessary. For example, during the Obamacare litigation or during the more recent Trump so-called travel ban litigation, multiple courts considered the issue at the same time, um, all reserve the balance. All right. So you waived that. You don't want us to consider that alternative. No, we're asking for a reversal of the transfer order. Thank you. Well, that will for sure be in anything I write on this case. Would the government accept denial of transfer stay in administrative closure until the DC courts have ruled? Um, I'd be reluctant to, and, and may I just say, uh, Tice Walters for the government, uh, uh, may it please the court. Um, I would want to, to confer with the client on that. Uh, my guess. Did the solicitor general sign off on the position? It's reflected in, in your response to the memorandum. Uh, the solicitor general doesn't have to, uh, uh, I don't know whether, whether the, uh, solicitor general, uh, looked at the position individually on this one. Uh, your honor, only an acting assistant attorney general signed off on the position. Uh, I think that is correct. That's the way it's signed. I think, I think that's likely. That barely gets you to the fifth floor, doesn't it? Uh, yes, your honor. I think, I think this, this government position, it seems to me is, is, um, um, not far from a will of the wisp, but it is not, uh, it doesn't look all that solid. Uh, maybe we ought to, we ought, maybe we ought to have you go find out whether, whether stay in, stay for sequential disposition is acceptable. Uh, if your honor would like, I would be entirely happy to, to find out the government's position on that. Um, my guess is that we, we might be, uh, amenable to that. We might not. You cite cases where it's been done. We certainly can, we certainly accept that it could be done. Um, it sounds like petitioner's counsel isn't interested in that course, uh, your honors, but just to take a quick step back here. Title 28 contains a number of provisions relating to transfer and some of those provisions like section 1407 contain, um, uh, expressly limit transfer to instances where there are common questions of fact and others like the statute at issue here, 1404 do not. Uh, and what petitioners are asking here is to import that limitation to common questions of fact into section 1404 and to read what the language that Congress did put in, which is a broad permissive may conferring considerable discretion on the district court to mean may, unless there are only common issues of law or may. Okay. Now I'm back to where I started with opposing counsel and I really was kind of setting it up for you. Where are the government, where are the 1404A cases where the government successfully, um, overcame opposition and got a transfer to DC circuit, DC courts? Um, I haven't done research into that exact question, your honor. I will, okay. Well, it's, I mean, that I would have started there. Where, what are the 1404A cases where the government sought transfer for any reason? Uh, so I know that the case cited on, uh, it's in page 92 of petitioner's appendix, the trout case. Uh, I believe that was one where the government successfully sought transfer. Um, but, but it has been a while since I've, uh, since I've read the district court cases that are, uh, it's trout unlimited versus department of agriculture. And that's nine 44 F sup 13. Um, that was the declining to transfer. Uh, yes, your honor. I mean, it, we're, we're not, we're not contending that, that courts regularly, uh, are asked to transfer in these circumstances. For instance, there are other first amendment challenges to this rule, to the deeming litigation pending in district courts around the country that the government did not move to transfer. Um, I'm proposing, I'm addressing the question, the fundamental question nobody seems to want to talk about is whether 1404A transfer principles that have developed over time in many cases for private sector litigation should apply when a bill non, and when the government is the party either seeking or opposing transfer, I think not frankly, just intuitively. Well, your honor, I think it is significant that Congress didn't write in any sort of a limitation like they did in, for instance, 1407 and list and limiting it to common questions of fact to write different principles here. This is judicial stuff. It is your honor. And I think that actually supports, uh, uh, not secondary sources, uh, discussing 1404A and government transfer issues. Your honor, as, as you noted, no, no party had suggested that there should be a different analysis for the government. Um, and, and I think that's why there hasn't been, uh, much research or discussion of that, but it is important to remember that this is an abuse of discretion standard and that this court will require a clear error of law or clear error of judgment. If the factors applied were wrong and the factors that were applied were the 1404A factors that applied of private litigation. If that was an error of law, mandamus is the remedy. Well, this court has, for instance, in the Terra international case, this court refused to limit the factors that a district court could look at. It listed something like 16 factors and three buckets of factors, which is witnesses, parties, and interests of justice. And it said that even that was not a extensive list and that there may be factors, it was private sector, your honor, but this court has very much refused to, uh, to intrude on district court's discretion. They've described it as much discretion. They've said that, uh, where the facts and circumstances are rationally capable of providing reasons for what the district court has done, that will be enough to deny the extraordinary writ of mandamus. Um, so no one here is suggesting that in every circumstance, um, even in every instance, identical complaints are being filed by the same council on the same day, that in every one of those circumstances, district courts are compelled to transfer. The question here is merely whether given this unique confluence of factors and where plaintiff's counsel have indicated that they are able and willing to litigate in the district of Columbia, the district court abused its discretion in recognizing that those judicial economy factors are at their apex. Well, counsel, let me ask you about two factors that, that bother me and whether they rise to an abuse of discretion. I don't know. But one of the factors is the district court, um, I think it was maybe in a footnote, but it might've also been in the text of the order itself, compared the pending cases per judgeship and said, well, in district Columbia, it's 280 and in Minnesota, it's 1,328 per judge. Um, is that an appropriate factor to consider to sort of say, well, they don't have as big of a workload, so I'm going to transfer it over there. I think it would be a lot to suggest that that could justify transfer on its own. Your honor. Um, I'm not sure it's inappropriate to have taken it into account or to have cited it. It was in a footnote. So as, as your honor suggests, I think it's unlikely that the district court based its transfer order on the differences in the pending cases across districts. Okay. The other, the other, uh, point is opposing counsel makes a really pushes this, which is the fact that, um, there's an existing case and just because there's an existing case somewhere else, it's inappropriate to sort of consolidate everything in one place and have only one, one court consider it rather than having multiple courts and allowing a lot of percolate. Um, is that any, he says he loses if that's an appropriate factor. I, I think he said that pretty clearly. So why is that an appropriate factor in the government's view? So a few reasons, your honor. Um, the first is that we're talking about, I mean, what you've just described is judicial economy and this court and the Supreme court have repeatedly made clear that judicial economy is a valid and in fact, important factor to consider. Even in the Mendoza case that they cite, one of the primary reasons for the outcome of that case was judicial economy. The Supreme court explained that if, uh, the doctrine of non-mutual offensive collateral estoppel applied against the government, that that would, uh, clog the courts because the government would be forced to appeal every adverse district court decision or risk being a stopped. So even their own cases don't support the fact that this is an inappropriate factor. And they certainly have pointed to no case either by the Supreme court or by any other court suggesting that under the transfer statute, that it is inappropriate to consider judicial economy. And as the district court here explained, uh, there are, these would have the identical record. They will have likely identical briefs. Uh, the record is 230,000 pages, more than that slightly. Uh, and that although petitioners suggest that you don't need to look at the record in this case, it will be a, uh, a record intensive case. Um, just because the case is hard, it requires a lot of documents just because the case is hard. And just because you're overloaded with cases doesn't mean you necessarily get to transfer it somewhere else. That's absolutely right, your honor. Um, but, but again, that the question isn't whether you necessarily get to transfer it, but as, as you suggested, whether it's inappropriate to even consider the question of judicial economy in those circumstances. And I don't think that there's really any support whatsoever, much less the sort of clear support you would need to say that there was any abuse of discretion by the district court here, that this, that one can't look at judicial economy. And you say that, or you think that that comes in, uh, at least in the transfer statutes language in the interest of justice, that, that portion of that. I believe that's, I mean, this court in the terror international case, for instance, uh, analyzed, uh, that as one of the judicial economies and express part of the interest of justice factor. Um, the Supreme court also mentioned, I believe it was in, uh, the Ferencz case, uh, that, uh, the convenience of the court has to be something that, that is looked at, um, under, under the interest of justice analysis. Um, a few other minor, uh, things I wanted to point out. Um, uh, as I mentioned, the cases are, and as petitioner mentioned, the cases are not factually distinct. So even under his proposed, uh, uh, analysis of the law that the tape, the district court still would have properly looked at judicial economy here. Um, and under petitioner's theory, uh, 94 identical judicial complaints could have been filed in each of the district courts in this country and transfer would presumably have been inappropriate and district court hands, uh, would have been tied in those circumstances. Uh, and we don't think that that's the right view of the law. And it certainly isn't so clearly right that there would have been an abuse of discretion here. Um, if the court has no further questions, uh, I'm happy to reserve the remainder or, um, waive the remainder of my time. Thank you, your honors. I think we agree with you, judge Loken, in that there is not a lot of precedent here and that's part of what makes this an unusual case, but I think the unusual aspect of this goes to show how, how strange the government's strategy was and how against the normal course of public law litigation and challenging rules, it really is. And that's the danger of this case that we would no longer have situations where for, you know, uh, an immigration executive order is challenged,  plaintiffs are allowed to challenge in their home districts. I just want to take a step back and emphasize the fact that these are Minnesota plaintiffs. One of the families challenging this is here in the courtroom today. This is an extremely important, uh, rule that will likely, uh, affect, if not end their current livelihoods, the current business that they're in. And they've brought a suit in their home state, uh, to challenge a rule that's affecting them in their home state. Uh, other than the fact that this is a public interest campaign, the government hasn't pointed to why this is different from the many other examples of a broad based litigation, challenging rules that have been allowed to proceed simultaneously. And this court should reverse the district court's order, um, to allow it to proceed simultaneously. Thank you. Thank you, counsel. It is an interesting and unusual issue of significant potential importance, and we will take it under advisement and do our best with it. The court will be in recess until nine o'clock.